J-S32008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANTE WASHINGTON | : | |
| | : | |
| Appellant | : | No. 455 MDA 2017 |

Appeal from the Judgment of Sentence February 14, 2017
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0001075-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DANTE WASHINGTON | : | No. 480 MDA 2017 |

Appeal from the Judgment of Sentence February 14, 2017
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0001075-2014

BEFORE:   PANELLA, J., NICHOLS, J., and PLATT[*], J.

MEMORANDUM BY PANELLA, J.:                **FILED NOVEMBER 02, 2018**

A jury convicted Dante Washington of robbing, shooting, and seriously injuring a cab driver, Eugene Phillips. The primary dispute at trial was whether the Commonwealth had correctly identified Washington as the man who had

---

[*] Retired Senior Judge assigned to the Superior Court.

shot Phillips. On appeal, Washington claims the trial court erred in limiting his evidence and arguments on the issue of identity. In its cross-appeal, the Commonwealth argues the court erred by allowing Washington to present expert testimony on the issue of eyewitness identifications. We quash the Commonwealth's cross-appeal and affirm Washington's judgment of sentence.

We begin by addressing the Commonwealth's cross-appeal. The Commonwealth's sole issue on cross-appeal is that the court erred in allowing the expert testimony of psychologist Jonathan Vallano, Ph.D., on the issue of the accuracy of eyewitness identifications. *See* Appellee/Cross-Appellant's Brief, at 16. However, in its conclusion, the Commonwealth merely requests we affirm the judgment of sentence in its entirety. *See id*., at 20.

A party must be aggrieved by an order to have the right to appeal from it. *See* Pa.R.A.P. 501. A party is not aggrieved when it wins "the case-in-chief even if one issue in the case was decided against that party." *Commonwealth v. Fitzpatrick*, 159 A.3d 562, 571 (Pa. Super. 2017) (citation and emphasis omitted). Here, the jury found Washington guilty on all charges. Thus, the Commonwealth prevailed in its case-in-chief. Also, the Commonwealth has not raised an issue with the sentence imposed. Under these circumstances, we must quash the Commonwealth's cross-appeal, as it prevailed below. *See id*., at 572.

Turning to Washington's issues on appeal, he leads with a challenge to the court's decision to exclude the expert testimony of toxicologist Lawrence

Guzzardi, MBA, MD. The court found Dr. Guzzardi's proposed testimony irrelevant.

Admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *See Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (citation omitted).

Relevance is the threshold for admissibility of evidence. *See Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002) (citation omitted). "All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "Evidence that is not relevant is not admissible." *Id*.

Washington sought Dr. Guzzardi's opinion on Phillips's mental state when he first identified Washington. Phillips first identified Washington in a photographic array while lying in his hospital bed. "Dr. Guzzardi's testimony could have explained what medications the victim was under the influence of

- 3 -

at the time he identified [Washington] from a photographic array." Appellant's Brief, at 17. Thus, the relevance of Dr. Guzzardi's testimony would be its ability to cast doubt on Phillips's identification of Washington.

This type of evidence is subject to additional limitations on admissibility. "[G]enerally speaking," expert evidence on the reliability of eyewitness identifications is relevant "where the Commonwealth's case is solely or primarily dependent upon eyewitness testimony." ***Commonwealth v. Walker***, 92 A.3d 766, 787 (Pa. 2014).[1]

Here, as the trial court recognized, the Commonwealth's case was not solely or primarily based upon Phillips's identification testimony. The Commonwealth also presented evidence that Washington had eaten dinner the night of the crime at Shannon Aikey's home. ***See*** N.T., Jury Trial, 12/14/16, at 89. Aikey lived in the building from which Washington approached the taxi to rob the driver. ***See id***., at 76-77; N.T., Jury Trial, 12/13/16, at 42. She also had seen Washington with a gun. ***See id***., at 91.

The Commonwealth also showed the jury a video taken from a surveillance camera. The camera was located along one of the possible escape routes taken by the robber. ***See*** N.T., Jury Trial, 12/13/16, at 104. The video shows a man walk between two homes to the rear porch area. ***See id***., at

---

[1] We acknowledge that the expert testimony discussed at length in ***Walker*** is not precisely the same sort of testimony that Washington wanted Dr. Guzzardi to present. However, we conclude the ***Walker*** analysis covers all expert testimony attacking or supporting the credibility of eyewitness testimony.

105. After a short period of time behind the house, he returns to the street and continues on his way. *See id*. When police searched the back porch of the house, they located two items that had been taken from Phillips in the robbery. *See id*., at 126. Aikey initially identified Washington as the man in the video. *See* N.T., Jury Trial, 12/14/16, at 93.

The Commonwealth also presented circumstantial evidence from forensic testing. Gun shot residue was detected on clothing found in Washington's residence. *See* N.T., Jury Trial, 12/13/16, at 129, 171. Furthermore, two DNA samples from Phillips's taxi suggested that Washington was present at the scene of the crime. One sample showed a correlation to Washington's DNA with a chance that, at most, approximately 17 other people in Pennsylvania would be correlated that highly. *See* N.T. 12/15/16, at 66-69.[2] A second sample indicated a correlation with Washington's DNA with a chance of a false positive being approximately 25 times less likely than the first sample. *See id*., at 69-70.

Thus, the Commonwealth presented significant other evidence capable of identifying Washington as the robber. The Commonwealth's identification of Washington was therefore not solely or primarily based upon Phillip's

_____

[2] This probability is based upon a match against an African-American genetic database. *See id*., at 66. Phillips identified his attacker as African-American. *See* N.T., Jury Trial, 12/13/16, at 43. Matches against databases for Caucasians and Hispanics yielded significantly lower probabilities for false positive correlations. *See* N.T., Jury Trial, 12/15/16, at 66.

eyewitness identification. Under these circumstances, we cannot conclude the trial court erred in finding the evidence irrelevant under **Walker**. Washington's first issue on appeal merits no relief.

Next, Washington contends the court erred in precluding him from using an exhibit while questioning Phillips. The exhibit was a modified version of the photographic array Phillips used to identify Washington. Washington had used photograph-editing software to superimpose a hood and sunglasses onto each face. The court acknowledged this evidence could be relevant to Phillips's ability to identify the robber. However, the court concluded Washington could not establish the modified photographs accurately depicted what the robber had been wearing on the night of the crime. Furthermore, the court concluded the modified photographs were ultimately cumulative to a point that was conceded by the Commonwealth: Phillips's view of his attacker was limited by a hood and sunglasses.

Washington's proposed exhibit is classified as a demonstrative exhibit. **See Commonwealth v. Serge**, 896 A.2d 1170, 1177 (Pa. 2006) (observing demonstrative evidence is "tendered for the purpose of rendering other evidence more comprehensible to the trier of fact"). The use of technologically-derived demonstrative exhibits is governed by the same fundamental standards applicable to any exhibit. **See id**., at 1176. Pennsylvania courts have a long history of admitting demonstrative evidence,

such as photographs, into evidence at trial, so long as it "fairly and accurately represents that which it purports to depict." *Id*., at 1177 (citation omitted).

Here, the court concluded Washington had not established the modified photographs fairly and accurately depicted what Phillips saw on the night of the crime. *See* N.T., Jury Trial, 12/13/16, at 82, 86. However, as Washington notes, the court did not let him ask Phillips if the photographs were a fair and accurate representation. *See id*., at 82.

Washington was entitled to ask that question. If Phillips had answered "no," the modified photographs would have been properly excluded under existing law. If Phillips had answered "yes," Washington would have been permitted to question Phillips about the photographs. But the Commonwealth would also have been permitted to explore the differences between the modified photographs and his observations of his assailant. *See id*., at 85-86 (prosecutor and court noting their beliefs about how the modified photographs differed from what Phillips had seen).

However, we conclude this error is harmless. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. Harmless error exists if the record demonstrates, *inter alia,* that the error did not prejudice the defendant or the prejudice was *de minimis.*" **Commonwealth v. Gonzalez**, 109 A.3d 711, 731 (Pa. Super. 2015) (citation and internal quotation marks omitted). Any possible prejudice suffered by Washington due to the court's failure to allow

him to ask if the photographs were fair and accurate representations was cured by the fact that Phillips conceded that the part of the assailant's face he could see clearly was "from about the bottom of the nose down to the chin[.]" N.T., Jury Trial, 12/13/16, at 72. The Commonwealth conceded, in its closing argument, that Phillips's identification was "not strong." N.T., Jury Trial, 12/20/16, at 63.

Additionally, as discussed previously, the Commonwealth's case was not solely limited to Phillips's identification. The Commonwealth also presented DNA evidence that strongly linked Washington the crime scene. Gun shot residue was found on Washington's clothes, and those clothes matched the clothes described by Phillips. Finally, the Commonwealth presented Aikey's prior statements placing Washington at the scene of the crime and identifying him as the man seen on a video discarding items stolen from Phillips.

Even assuming Phillips would have testified to the accuracy of the modified photographs, any prejudice suffered by Washington from their exclusion was *de minimus*. Washington's second issue merits no relief.

Next, Washington argues the court erred in precluding certain testimony from his expert psychologist, Jonathan Vallano, Ph.D. In his expert report, Dr. Vallano opined on the effect the sunglasses and hood had on Phillips's ability to identify his assailant. The court ruled these effects were not outside the common knowledge held by the jury, and therefore precluded Dr. Vallano from testifying on the issue.

The Pennsylvania Rules of Evidence governs the admissibility of expert testimony on scientific knowledge:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702. "Expert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person." *Storm v. Golden*, 538 A.2d 61, 64 (Pa. Super. 1988) (citations omitted).

Here, Washington wanted the jury to consider the impact the sunglasses and hood had on Phillips's ability to identify his assailant. The court ruled the ability to assess this impact was well within the common knowledge of the jurors. We cannot conclude this ruling was an abuse of the court's discretion. Washington's third issue on appeal merits no relief.

Next, Washington contends the court erred in limiting the testimony of his statistical expert, Nathaniel Adams. Adams has several degrees in computer science, and works for a company that performs forensic DNA consulting. As forensic consultants, the company reviews DNA analysis reports and provides critiques and highlights issues with the results.

The court qualified Adams as an expert on computer science and statistics, but denied expert status on issues dealing explicitly with biology. Washington complains this limitation of Adams's testimony rendered his

testimony "impotent." Appellant's Brief, at 34. "[T]he court's interpretation and limitation on Mr. Adams's testimony was the equivalent of saying a person was not permitted to count wild horses at Assateague Island because he was not a veterinarian." *Id*., at 35. However, Washington misrepresents the reasoning used by the court when it sustained the Commonwealth's objections.

Defense counsel used Adams to challenge the Commonwealth's method for calculating probabilities from the raw data. In particular, Adams testified that one of the samples from the taxi actually indicated an "[a]pproximately one in three and a half billion" probability that the sample matched Washington's DNA. N.T., Jury Trial, 12/15/16, at 172-173.

The court overruled the Commonwealth's objection to Adams's testimony, noting the opinion was based solely upon calculating probability from the raw data. *See id*., at 173. The Commonwealth responded by objecting on the basis that the opinion was outside the scope of Adams's expert report. *See id*. The court sustained this objection. *See id*. When Washington sought to have Adams opine on the correct calculation of probabilities for two other samples, the Commonwealth again asserted this testimony was outside the scope of the expert report. *See id*., at 175. And again the court sustained the objection. *See id*.

On appeal, Washington links the exclusion of these calculations to the court's ruling on expertise. As we have shown, however, the rulings were

based upon the scope of Adams's report. Washington presents no argument that the court incorrectly construed the expert report, or that the expert report implicitly covered these calculations. We therefore find that Washington's fourth issue on appeal merits no relief.

In his fifth and final issue, Washington argues the court erred in precluding defense counsel from "arguing during closing argument that Eric Williams committed the offense and from specifically pointing the finger at Mr. Williams." Appellant's Brief, at 37. Williams was present at Aikey's home on the night of the crime. When his hands were tested for gun shot residue, the test registered two of the three particles found in gun shot residue. When only two particles are found, the result is described as "indicative," as opposed to "characteristic" when all three particles are found.

However, during argument following the court's ruling, defense counsel admitted he was never going to argue that Williams committed the crime. **See** N.T., Jury Trial, 12/20/16, at 7. He repeated this sentiment several times. **See** **id**., at 10 ("I'm never going to say that [Williams was] the one that did it."); 12 ("I wasn't going to [say Eric Williams did it.]"). This issue is therefore waived, as it was not preserved in the trial court. **See** Pa.R.A.P. 302(a).

As none of Washington's issues on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Commonwealth's cross-appeal at 480 MDA 2017 quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/2/2018</u>